UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MS. DOE, ETC.,           )
                         )
    Plaintiff,            )
                         )
v.                       )    No. 3:10-00412
                         )    JUDGE HAYNES
                         )
MAXIMUS, et al.          )
                         )
    Defendants.          )

## MEMORANDUM

Plaintiff, Ms. Doe,[1] filed this action under 42 U.S.C. § 1983 against the following Defendants: Maximus, its Parent, Subsidiaries and related entities; Unum Group; Hugh O. Maclellan; Providence Service Corp., Inclusive of its Parent/Insurance Co., Bank and Subsidiaries ("Providence"); Vanderbilt University/VUMC ("Vanderbilt"); Christine Bradley; Harvard University; Phil Bredesen; Andrea Conte; Don Ash; Rita Ash; David Loughry; Chris Craft; Ernest Burgess; Sean Puckett; Bill Ketron; Jim Tracy; Glenn Funk; Rutherford County Sheriff's Department; Middle Tennessee State University ("MTSU"); Bass, Berry & Sims; Bradley Arant Boult Cummings; Marsha Blackburn; Beth Harwell; Jim Arnett; Lamar Alexander; Jim Cooper; Charles Traughber and wife; District Attorney Bill Whitesell; Representative Bart Gordon; Channel 9; and John Does 32-500 Inclusive.

Plaintiff asserts claims of "financial slavery," failure to disclose, false advertising, "induced mistakes," retaliation, intimidation, fraud, "failure to prevent fraud," "intentional infliction of

---

[1] The caption of the Complaint lists "Ms. Doe, ETC.", but only one Plaintiff signed the Complaint. (Docket Entry No. 1, at pp. 1, 5).

1

emotional/physical distress," and "violations under Sections 13(b) and Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. 53(b) & 15 U.S.C. 45(a)" and "violations of Fair Labor Standards Act/Taxation Without Representation."[2]

Before the Court are the following motions: Austin Peay State University's and MTSU's motion to dismiss (Docket Entry No. 38); Bradley Arant Boult Cummings's motion to dismiss (Docket Entry No. 45); Unum Groups' motion to dismiss (Docket Entry No. 49); Hugh Maclellan's motion to dismiss (Docket Entry No. 51); Ernest Burgess's and Rutherford County Sheriff's Department's motion to dismiss (Docket Entry No. 54); Maximus's motion to dismiss (Docket Entry No. 56); Glenn Funk's motion to dismiss (Docket Entry No. 58); Sean Puckett's motion to dismiss (Docket Entry No. 64); Art Hayes's and Jim Arnett's motion to dismiss (Docket Entry No. 65); Don Ash's and Chris Craft's motion to dismiss (Docket Entry No. 68); David Loughry's motion to dismiss (Docket Entry No. 70); and Plaintiff's motion to amend complaint (Docket Entry No. 75). Plaintiff filed a response (Docket Entry No. 60).

## A. ANALYSIS OF COMPLAINT

Plaintiff alleges that she is a rape and sexual abuse victim and is a resident of Tennessee and that "[v]enue is proper in Davidson County, Tennessee, where the Defendants do business, provide captive services or have with intent & malice propagated captive, financial slavery practices." (Docket Entry No. 1, Complaint at p. 2). Plaintiff alleges that "Financial Slavery is a practice in which Judges, Courts, Politicians, publically traded companies which are simultaneously Insurance Companies/Banks/Social Service Providers/Private Probation Companies and entities traditionally

---

[2]Plaintiff has filed a virtually identical Complaint in 3:10-cv-00411 against the same Defendants, but includes claims for due process and sexual harassment.

2

thought of as non-partisan organizations or non-profits engage in taking unwitting victims captive in order to enslave them financially." Id. at p. 1. Plaintiff alleges that slavery has been "re-legislated back into existence in Tennessee" and that Plaintiff intends to offer as evidence "audiotapes of Defendants and, or alternately their wives, brothers, co-workers, colleagues, and employees." Id.

Plaintiff asserts that Bass Berry & Sims is listed as a Defendant "based, in part, on the audiotape of Henry Walker, Partner in the Law Firm Bradley Arrant Boult Cummings who asked, in parting, that I relay his regards to Bass' head of litigation," and that "Don Ash, presiding judge of the judiciary, was thrown into the fire, first, by Rutherford County Clerk, Eloise Geither, while Rutherford County Mayor Burgess was thrown into the fire by Judge Ash who subsequently cast himself in as well, but you get the idea." Id. at p. 2.

Plaintiff alleges, in pertinent part, that:

(3) Tennessee Judge Don Ash began working with a Private Probation Company started by the Longfellow family out of Georgia in 1994- accepting almost 900k from them before he told the Mayor on County Commissioners about the arrangement. A relationship he lies about. The Longfellow's business's offered "training" classes in addition to CCC (GA based) & TPS (TN based) which are Probation Companies+ **JAI which employed Judges**. The parties shared space in courthouses, operated without virtue of written contracts and arrested people based on oral warrants and orally amended warrants practices still largely in place today. Once taken "captive" the parties extort monies from the "captives."

(4) From 1993-96 The Administrative Office of the Courts commissioned the Future Study aka "To Serve All People" which per audio Was an attempt to look into the future and decide how justice and social policy would be administered in TN from 1996-2021. In attendance: Judges, Insurance Companies/Banks, Tennessee Newspapers & TV Station owners, Corrections, politicians and Economics & Computer scholars from Vanderbilt & UT. At this same time results of a State commissioned study was presented warning of the perils to segments of the population if such arrangements were allowed to be implemented. Per Vanderbilt & other Attendee audio attempts to put protective judicial improvements in place were rejected by AOC.

3

(5) Captive Courts, Captive non-partisan groups, Captive non-profits and Captive Social Service Providers were unleashed on the public without any disclosure of their "slavery" grounded and court enforced business practices or ownership e.g., Phil Bredesen/Andrea Conte formerly owned and are major stockholders, receiving payments from the same extortionist Insurance Company/Private Probation Company/Social Service Provider.

(6) Citizens, babies, to victims of rape, to those facing the most minor of charges are informed, w/out virtue of a financial analysis that they have no right to public defenders or traditional services (untrue per audio of Henry Walker & the US Attorney Office). Victims who are now Captives are shuttled to Captive providers or owners who get to write "ever- changing policies or terms, financially based, they must fulfill or face the wrath of their "owner(s)": the Captive Provider/Insurance Co/Bank + Judge + whichever Politicians own stock & are profiting.

(7) District Attorneys act as salesmen soliciting signatures for Captive Private Probation Co./Insurance Co/Bank/Social Service Provider.

(8) TN Legislators instituted statutes allowing Counties to charge victims jailed by Captive Companies to be charged for per day for their jail stay + doctor/nurses visits + toiletries+ jumpsuit + toothbrush +...

(9) The Captive is then brought back before the "honorable Judge" and told to get back down there (as the extortionists are out of the Courthouse & as far as block away) and pay those people as much money as they demand from you for as long as they demand it or face our wrath again (per audio of course).

(10) Court Ordered & Enforceable Revenue + 365+Day Accounting Cycle Revenue - **Resistance**=Ability to Demand **Unregulated** Additional Revenue over the course of numerous years for the most minor of offenses to include being a victim or born to one = **financial slavery & trafficking in persons** per audio as Attorney Generals, while paid by taxpayers, protect state agencies and are the gatekeepers of the Captives list and the TBI serves at the will of the District Attorneys who act as Salesmen and solicit signatures for the Owners/Captive Insurance Co/Bank/Private Probation Co/Social Service Provider.

(11) Per NIH audio it would be highly unethical if not "Nazi-ism" for a State or the grant fund seeking entities within to meet, predict, legislate slavery back into existence then solicit federal funds via universities or other channels to study the effects of the legislated slavery on its captives.
(12) Plaintiff, a victim of rape and sexual assault, was subjected to the financial slavery and trafficking practices outlined then subjected to threats of bodily harm, incarceration, unethical legal practices and additionally was banned from seeking

4

medical care, educational, and even religious services for self and her family when she attempted to resist. Plaintiff sought assistance but found it lacking as the Tennessee Waltz was a whitewash or diversion away from what has been called the "Judicial Mafia."

Id. at pp. 2-4 (emphasis in original).

In conclusion, Plaintiff states that slavery has caused her "grievous physical, mental, and emotional pain, suffering, and distress," "claims whistleblower status" and seeks to end "these practices which Defendants, all, knew or should have known were among the most harmful that could be exercised against another." Id. at p. 4. Plaintiff states that she seeks damages "to be specified at a later time." Id.

### B. CONCLUSIONS OF LAW

Upon a motion to dismiss, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, _ U.S. _, 129 S.Ct. 1937, 1949 (2009)) (citation omitted). The Court must "'construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted). The Court "'need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" Id. at 903 (citations and quotation marks omitted).

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286, (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-1950.

While pro se complaints are liberally construed and are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), pro se complaints must also satisfy the "facial implausibility" standard articulated in Twombley and Iqbal. Stanley v. Vining, 602 F.3d 767, 771 (6th Cir. 2010).

Here, Plaintiff does not allege any discernible facts as the bases for her complaint. Nor does Plaintiff allege what violation each Defendant allegedly committed or the date any alleged violation occurred. Many of the Defendants are only named in the caption of the Complaint and are not mentioned elsewhere. Plaintiff's allegations are incomprehensible and unintelligible. Moreover, several of Plaintiff's claims are based on meritless legal theories. There is not a cognizable legal claim for "financial slavery" or "failure to prevent fraud" under either state or federal law.

Claims under Sections 5(a) and 13(b) of the FTCA may only be brought by the FTC itself. "Courts have uniformly held that a private right of action does not exist under § 5 of the FTCA." Morales v. Walker Motors Sales, Inc. 162 F. Supp. 2d 786, 790 (S.D. Ohio 2000); American Airlines v. Christensen, 967 F.2d 410 (10th Cir. 1992). Section 13(b) of the FTCA specifically provides, "Whenever the Commission has reason to believe that any person . . . is violating . . . any provision of law enforced by the Federal Trade Commission, and that the enjoining thereof . . . would be in the interest of the public the Commission by any of its attorneys . . . may bring suit in a district court of the United States to enjoin any such act or practice." 15 U.S.C. § 53(b). There is no legal basis for Plaintiff's "taxation without representation" claim. See Heald v. District of Columbia, 259 U.S. 114 (1922) (Brandeis, J.) (observing that "[t]here is no constitutional provision which so limits the power of Congress that taxes can be imposed only upon those who have political representation").

7

Plaintiff also fails to state a legal claim where the complaint alleges that a member of one law firm requested Plaintiff to "relay his regards to Bass Berry & Sims's head of litigation," (Docket Entry No. 1, Complaint at p. 2), and where the complaint alleges that a study was commissioned by the "Administrative Office of the Courts" as to how "justice and social policy would be administered in Tennessee from 1996-2001," and that "Economics and Computer Scholars from Vanderbilt and UT," among others, were in attendance and that an audio record of such conference was made by Vanderbilt and others, id., at p.3. These allegations do not state a factual basis for a legal claim.

Further, Plaintiff's complaint fails to describe how any of the named Defendants' conduct satisfies any element of the claims asserted. The complaint is devoid of any acts or omissions attributable to any Defendant. Many of Plaintiff's claims ostensibly involve state conduct, yet Plaintiff does not allege any facts establishing a claim under § 1983. For a § 1983 claim against a supervisory official, a plaintiff must show that the defendant was either directly or personally involved in the alleged unconstitutional activity. Dunn v. State of Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). Liability under § 1983 must be based on more than *respondeat superior* or the right to control employees. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). Here, Plaintiff's complaint lacks any factual basis to support a claim against any Defendant. "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Hunter v. Sec'y of the Army, 565 F.3d 986, 992 (6th Cir. 2009).

Plaintiff filed an action against Providence, the State of Tennessee and John Does 1-50 that was dismissed on the merits, and the complaint against Providence here appears to be a continuation of the previous action. See (Docket Entry No. 28, Order); Ms. Doe, et al. v. Providence Community

Corrections, et al., 3:09-cv-0671. Thus, Plaintiff's complaint as to Providence is barred by the doctrine of res judicata, as well as the collateral estoppel doctrine for any claims that could have been asserted in that action. An action will be barred under res judicata where (1) prior litigation involved the same parties or their privies, (2) the prior litigation was terminated by a final judgment on the merits, and (3) the prior litigation involved the same claim or cause of action as the present lawsuit. Hydranautics v. Film Tec Corporation, 204 F.3d 880 (9th Cir. 2000). Under the collateral estoppel doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the first case." Allen v McCurry, 449 U.S. 90, 94 (1980) (citing Montana v. United States, 440 U.S. 147, 153 (1979)).

Accordingly, under Twombly, the Court concludes that Plaintiff's complaint "has not 'nudged [her] claims' . . . 'across the line from conceivable to plausible'" and should be dismissed. Iqbal, 129 S.Ct. at 1950-51 (quoting Twombly, 550 U.S. at 547).

**Motion to Amend Complaint**

Plaintiff filed a motion to amend her complaint. (Docket Entry No. 75). Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint "shall be freely given when justice so requires." A Court should deny leave to amend a complaint "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." Crawford v. Roane, 53 F.3d 750, 753 (6th Cir. 1995). To determine whether "justice so requires," "the court must have before it the substance of the proposed amendment." Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc., 288 F.3d 895, 906 (6th Cir. 2002); Kostyu v. Ford Motor Co., No. 85-1207, 1986 WL 16190, at *2 (6th Cir. July 28, 1986) (denying plaintiff's motion to amend because

"plaintiff did not submit a proposed amended complaint and failed to disclose what amendments he intended to make.").

Here, Plaintiff's motion to amend fails to provide either a proposed amended complaint or a description of the proposed amendments. The motion fails to allege any additional facts or articulate the bases for any of Plaintiff's claims. Thus, the Court has no basis for finding that "justice so requires" leave to amend. Accordingly, the Court concludes that Plaintiff's motion to amend should be denied. See Glick v. Farm Credit Servs. of Mid-America, FLCA, No. 5:09CV02273, 2010 WL 3118673, at *1 (N.D. Ohio Aug. 6, 2010) (finding plaintiff's pro se status did not relieve plaintiff of the obligation to provide the court with the substance of the proposed amendment).

For these reasons, the Court concludes that the Defendants' motions to dismiss (Docket Entry Nos. 38, 45, 49, 51, 54, 56, 58, 64, 65, 68, and 70) should be granted, and Plaintiff's motion to amend complaint (Docket Entry No. 75) should be denied.

As to the remaining Defendants, the Court next considers whether Plaintiff's claims are insubstantial and whether the Court has jurisdiction. Plaintiff bears the burden to meet the pleading requirements necessary to establish the Court's jurisdiction. Gibbs v. Buck, 307 U.S. 66, 71 (1939). A court may consider sua sponte whether the Court lacks jurisdiction over the action, as the Sixth Circuit has stated:

> [A] district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion. . . . [T]hat a plaintiff be given the opportunity to amend does not apply to sua sponte dismissals for lack of jurisdiction[.]

Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) (citations omitted).

In Hagans v. Lavine, 415 U.S. 528, 536-37 (1974), the Supreme Court stated that "[o]ver the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion.'" (citations omitted). These holdings formed the insubstantial doctrine that is "a statement of jurisdictional principles affecting the power of a federal court to adjudicate constitutional claims." Id. at 538. As the Supreme Court explained:

> "Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious," Bailey v. Patterson, 369 U.S. [31,] 33 [1962]; "wholly insubstantial," ibid.; "obviously frivolous," Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288 (1910); and "obviously without merit," Ex parte Poresky, 290 U.S. 30, 32 (1933). The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281.

Id. at 537-38.

As examples of insubstantial claims in the Sixth Circuit, in Conner v. Greef, No. 03-5986, 99 Fed. Appx. 577 (6th Cir. April 26, 2004), a pro se plaintiff's claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 as well as Tennessee state law to vacate arbitration award under Federal Arbitration Act were deemed insubstantial. In White v. Michigan Center for Forensic Psychiatry, 66 Fed. Appx. 626 (6th Cir. 2003), an incomprehensible complaint alleging fraud, abuse, sexual harassment, and public rumors against state of Michigan, the Center for Forensic Psychiatry Hospital, along with several of its doctors, directors, and employees was dismissed as insubstantial. In contrast, in Graham v. Mercer, No. 98-2238, 1999 WL 1045103 (6th Cir. Nov. 10, 1999), a

11

prisoner's pleadings alleging a difference in opinion between prisoner and prison doctors over medical diagnosis or treatment, were deemed not insubstantial.

Upon review, the Court concludes that Plaintiff's complaint falls under White. Without any discernible factual allegations for federal law claims or claims over which this Court has jurisdiction, the Court concludes that Plaintiff's claims against the remaining defendants should be dismissed for lack of subject matter jurisdiction.

An appropriate Order is filed herewith.

ENTERED this the 15t day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge